## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOHN PADILLA,

        Plaintiff,

v.                                                            No. CV 14-495 CG

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SSA,

        Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on John Padilla's *Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum* ("Motion"), filed on February 20, 2015, (Doc. 18); Defendant's *Brief in Response to Plaintiff's Motion to Reverse or Remand Procedural History* ("Response"), filed on May 19, 2015, (Doc. 22); and Mr. Padilla's *Reply to Brief in Response to Plaintiff's Motion to Reverse or Remand* ("Reply"), filed on May 29, 2015. (Doc. 24).

On July 28, 2010, Mr. Padilla filed applications for disability insurance and supplemental security income benefits, alleging disability beginning May 22, 2008. (Administrative Record ("AR") at 149–59). His application was denied on December 1, 2010, (AR 69–72), and also upon reconsideration on April 1, 2011, (AR 82–88). Mr. Padilla filed his request for a hearing on April 20, 2011, (AR 89–93); the hearing occurred on March 29, 2012 before Administrative Law Judge ("ALJ") Ben Willner. (AR 31–63). Mr. Padilla and Thomas A. Greiner, an impartial vocational expert, testified at the hearing. (*Id.*).

The ALJ issued his opinion on June 18, 2012, finding that Mr. Padilla was not disabled. (AR 11–30). Mr. Padilla filed an application for review by the Appeals Council,

which was summarily denied, (AR 1–4), making the decision of the ALJ the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Mr. Padilla complains that the ALJ committed reversible, legal error by: (i) failing to evaluate the opinions of several treating and consultative medical sources pursuant to the proper legal standards; and (ii) making an incomplete and improper residual functional capacity ("RFC") finding. (Doc. 18).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the Administrative Law Judge did not commit reversible legal error as alleged by Mr. Padilla, the Court orders that the Motion be **DENIED** and the case be **DISMISSED WITH PREJUDICE**.

## I.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at

1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits (DIB) and supplemental security income (SSI), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this

definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; that (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, he will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

### III. Background

Mr. Padilla initially applied for disability benefits alleging disabling spine and neck injuries. (AR 174). At step one, the ALJ determined that Mr. Padilla met the insured status requirements through December 1, 2013, and found that he had not engaged in substantial gainful activity since May 22, 2008, the date of alleged onset. (AR 16). At step two, the ALJ concluded that Mr. Padilla was severely impaired by degenerative disc disease, degenerative joint disease, and chronic pain syndrome. (AR 16–18). The ALJ also concluded that Mr. Padilla's depression, of which there was some evidence in the record, was non-severe. (AR 17–18).

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

At step three, the ALJ considered whether Mr. Padilla's back and knee impairments met or medically equaled listing 1.02 or 1.04, and concluded that the medical evidence did not establish that Mr. Padilla satisfied those listings' criteria. (AR 18). The ALJ ultimately found that none of Mr. Padilla's impairments, solely or in combination, met or medically equaled any of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (*Id.*).

The ALJ proceeded to step four, and first determined Mr. Padilla's RFC. He considered Mr. Padilla's subjective complaints and the objective medical evidence in the record, and ultimately found Mr. Padilla's testimony to be not credible to the extent it differed from the RFC finding. (AR 18–21). The ALJ found that Mr. Padilla could perform a restricted range of light work, as that term is defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he can only occasionally climb, balance, stoop, kneel, crouch, and crawl, and can only frequently reach overhead with both hands. (AR 18). The ALJ further noted that Mr. Padilla must avoid concentrated exposure to extreme cold and to hazards, such as unprotected heights and dangerous machinery. (*Id.*).

Next, the ALJ considered whether Mr. Padilla was capable of doing any of his past relevant work. (AR 23). The ALJ explained that Mr. Padilla's past relevant work includes the jobs of retail lumber store manager, machine shop manager, and carpenter, which are more demanding than his RFC. (*Id.*). In light of the RFC finding, the ALJ found that Mr. Padilla was unable to do his past relevant work. (*Id.*).

At step five, the ALJ determined whether Mr. Padilla would be able to perform any other work existing in significant numbers in the national economy. (AR 23–24). The ALJ categorized Mr. Padilla, at the age of 50, as an individual closely approaching advanced

age, with at least a high school education and English-language proficiency. (*Id.*). The vocational expert stated that an individual with Mr. Padilla's same age, education, work experience, and RFC could perform the jobs of office helper, counter clerk, and electronics worker. (AR 60). The vocational expert testified that those jobs existed in significant numbers in the national economy. (*Id.*). After finding the vocational expert's testimony to be consistent with the Dictionary of Occupational Titles, the ALJ adopted his testimony. (AR 24).

The ALJ then concluded that because Mr. Padilla was capable of performing work existing in significant numbers in the national economy, he was not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 24).

### IV. Analysis

Mr. Padilla alleges that the ALJ committed several reversible errors at step four of the sequential analysis. First, Mr. Padilla contends that the ALJ failed to properly weigh the medical opinions of Eugenio Rivera, M.D., Frank Hesse, M.D., and William H. Doggett, D.C pursuant to the correct legal standards. He argues that the ALJ did not provide sufficiently specific reasons for discounting these medical opinions, and in the alternative that the ALJ's reasoning is not supported by substantial evidence in the record. He also complains that the ALJ failed to properly assess all of the physical limitations caused by his impairments in formulating the RFC.

The Commissioner maintains the ALJ did not commit legal error because he properly accounted for all of the medical opinions in the record in making the RFC finding. The Commissioner also maintains that the ALJ considered all of the evidence in the record related to Mr. Padilla's impairments, and assigned to him limitations that the

6

evidence reasonably supports.

    A.    <u>*Challenge to the ALJ's Analysis of the Medical Opinions*</u>

Mr. Padilla first challenges the ALJ's consideration of Dr. Rivera, Dr. Hesse, and Dr. Doggett's medical opinions. He argues that the ALJ erred by not properly explaining why he discounted their medical opinions, which ascribe more restrictive limitations to Mr. Padilla than did the ALJ. The Commissioner responds that those medical opinions were properly weighed and reflected accordingly into the ALJ's RFC finding, and that Mr. Padilla simply failed to meet his burden of proving he is disabled.

    1.    *The ALJ Must Evaluate Every Medical Opinion in the Record*

The Regulations require the ALJ to evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 404.1527(b), 416.927(b). A medical opinion is a statement from a physician, psychologist, or other acceptable medical source that reflects judgments about the nature and severity of the claimant's impairment(s), including their symptoms, diagnosis and prognosis, what the claimant can still do despite the impairment(s), and physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

"The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (per curiam) (citing 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(d)(1), (2), and Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, *2 (July 2, 1996)).

The ALJ should accord opinions of treating physicians controlling weight when those opinions are well-supported by medically acceptable clinical and laboratory

diagnostic techniques and not inconsistent with other substantial evidence in the record; this is known as the "treating physician rule." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Langley*, 373 F.3d at 1119. A treating physician's opinion is accorded controlling weight because the treating physician has a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations." *Doyal*, 331 F.3d at 762 (citation omitted).

If a treating physician's opinion is not supported by medical evidence or consistent with the record, it may still receive deference. SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). The level of deference the treating physician's opinion receives must be determined in consideration of the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c). In sum, the ALJ must conduct a sequential, two-step inquiry if he wishes to accord a treating physician's opinion less than controlling weight. First, the ALJ must find the opinion to be unsupported by medical evidence or inconsistent with substantial evidence in the record. Next, he must determine what deference he will grant the opinion after considering the factors listed above. Each step in the inquiry is "analytically distinct." *See Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The medical opinions of non-treating sources are also evaluated by the ALJ, but in

consideration of the deference factors alone. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

When evaluating any medical opinion in the record, the ALJ must give good reasons—reasons that are "sufficiently specific to make clear to any subsequent reviewers"—for the weight that he ultimately assigns to the medical opinions in the record. *See Langley*, 373 F.3d at 1119 (citations omitted). His determination, like all of his findings, must be supported by substantial evidence.

  2. *The ALJ's Consideration of Dr. Rivera's Medical Opinions*

Mr. Padilla contends that the ALJ erred by ignoring Dr. Rivera's assessment of his functional abilities dated August 23, 2011. (AR 823–24). Dr. Rivera examined Mr. Padilla and noted that Mr. Padilla had chronic back pain, that he looked "very uncomfortable," and that he was "[n]ot able to sit for more than a few minutes." (AR 823). Dr. Rivera observed that Mr. Padilla was seeing another physician for his pain symptoms, and that he would begin using medical marijuana because he was very sensitive to other pain medications that he had tried. (*Id.*). Dr. Rivera stated that he counseled Mr. Padilla regarding medical marijuana, and filled out his disability forms. (AR 824). Dr. Rivera opined that Mr. Padilla was "severely affected by his pain," and that he was unable to work indefinitely, if not permanently. (*Id.*).

The ALJ afforded Dr. Rivera's medical opinion "little weight," for the reasons that Dr. Rivera's opinion: (i) was unsupported by the preponderance of objective clinical and diagnostic findings in the record; and (ii) was based primarily on Mr. Padilla's own verbal and physical presentation of his symptoms, rendering it less reliable. (AR 22). Mr. Padilla argues this statement does not constitute a reasoned finding or sufficiently explain the ALJ's deference determination. Defendant argues that substantial evidence and

applicable law support the ALJ's evaluation of Dr. Rivera's opinion.

As explained above, the ALJ must follow two steps if he wishes to accord a treating physician's opinion less than "controlling weight." First, the ALJ must find the opinion to be unsupported by medical evidence or inconsistent with substantial evidence in the record. Next, he must determine what deference he will accord the opinion after considering the six deference factors listed above, and state sufficiently specific reasons for that determination. Here, the ALJ explained that he would not give Dr. Rivera's opinion controlling weight because it was not supported by the medical evidence in the record. He further stated that he would only accord the opinion little weight because the opinion relied primarily on Mr. Padilla's subjective complaints, which the ALJ found to be not credible. The ALJ also determined in a separate section of the decision that Mr. Padilla was prone to symptom magnification and that his subjective complaints of his symptoms were not credible to the extent that he claimed. (AR 22).

In determining the weight the ALJ would afford Dr. Rivera's opinion, he considered the degree to which Dr. Rivera's opinion is supported by relevant evidence, by contrasting the objective medical evidence with Mr. Padilla's subjective statements. He also considered the consistency between the opinion and the record as a whole. These are two of the deference factors noted above that the ALJ must consider in determining what weight to provide a medical opinion. While an ALJ should consider all of the deference factors, an ALJ is not required to explicitly discuss each one in weighing a medical opinion. *See Anderson v. Astrue*, No. 05-4305, 319 Fed. Appx. 712, 718–19 n.2, 722–23 (10th Cir. Apr. 3, 2009) (unpublished). Further, all of the factors may not be relevant in a particular case. *See Jones v. Colvin*, No. 12-5057, 514 Fed. Appx. 813, 818

(10th Cir. Apr. 26, 2013) (unpublished). The Court finds that the ALJ gave sufficiently specific reasons why he afforded limited or minimal weight to Dr. Rivera's opinion. Mr. Padilla has failed to prove that the ALJ committed legal error when he weighed the opinion.

Mr. Padilla also argues that Dr. Rivera's opinions warrant a more restrictive RFC finding than the one the ALJ assigned, and that the ALJ erroneously considered certain medical evidence in applying the deference factors. Mr. Padilla asks the Court to reweigh the evidence and formulate a more restrictive RFC based on an interpretation of Dr. Rivera's opinion that is more favorable to a finding of disability. The Court may only consider whether the ALJ followed the specific rules of law in weighing a medical source opinion, and may not reweigh the evidence or substitute its own judgment for the Commissioner's. *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008). The Court finds that the ALJ gave sufficiently specific reasons for the weight he assigned to Dr. Rivera's opinions in consideration of the deference factors and his finding is supported by substantial evidence.

### 3.   *The ALJ's Consideration of Dr. Hesse's Medical Opinion*

It is undisputed that Dr. Hesse was a consultative medical source who evaluated Mr. Padilla on September 28, 2010. (AR 710–13). Dr. Hesse opined that Mr. Padilla had severe lumbar and cervical arthritis with radiculitis, and would never be able to work because of those problems. (AR 713). The ALJ found that Dr. Hesse's opinion was not well-supported by other objective evidence in the record. (AR 22). He noted that x-rays of Mr. Padilla's spine taken on September 14, 2010, (AR 702–07), in addition to clinical findings made by Richard Castillo, M.D. on October 28, 2010, (AR 782), did not support

Dr. Hesse's opinion. (*Id.*). For those reasons, the ALJ accorded no weight to Dr. Hesse's opinion regarding that particular issue. (*Id.*).

The Social Security Regulations require the ALJ to evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 404.1527(b), 416.927(b). The ALJ determines what weight to give such a medical opinion by applying the deference factors. *See Hamlin*, 365 F.3d at 1215. "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson*, 366 F.3d at 1084 (citing 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(d)(1), (2); SSR 96-6p, 1996 WL 374180, at *5–6).

Mr. Padilla contends that the ALJ erred because the objective evidence in the record supports Dr. Hesse's opinion. The Commissioner responds that the ALJ cited to objective medical evidence demonstrating that Mr. Padilla was not severely impaired by arthritis. The ALJ noted that the x-ray films of Mr. Padilla's spine taken September 14, 2010 showed only mild degenerative changes. (AR 702–07). Dr. Castillo reviewed Mr. Padilla's x-ray films a little over one month later, and similarly found them to be "basically normal." (AR 782). Upon evaluation, Dr. Castillo diagnosed Mr. Padilla with chronic axial spine pain, but observed that Mr. Padilla had normal strength and sensation in his legs, that he showed "marked symptom magnification," and that surgical intervention would not benefit him. (*Id.*).

In his decision, the ALJ explicitly discussed the degree to which the opinion was supported by relevant evidence. The ALJ need not explicitly discuss every deference factor; he need only give sufficiently specific reasons why he afforded the weight he

12

ultimately assigned to the opinion. *Langley*, 373 F.3d at 1119 (citations omitted). The Court finds that the ALJ gave good reasons why he afforded no weight to Dr. Hesse's opinion that Mr. Padilla suffered from debilitating and severe arthritis.

Mr. Padilla argues that the ALJ's finding was unsupported by substantial evidence because Dr. Hesse's opinion was consistent with the opinions and treating records of Dr. Rivera, Dr. Doggett, and several other examining physicians. Further, Mr. Padilla contends that the ALJ should have re-contacted Dr. Hesse for clarification or ordered another consultative evaluation instead of rejecting his opinion outright. Mr. Padilla also maintains that the ALJ did not adequately explain his reasoning, that he improperly misconstrued Dr. Castillo's finding of symptom magnification as malingering, and that the ALJ improperly questioned Mr. Padilla's credibility for misstating to Dr. Castillo that he had been diagnosed with severe arthritis when he had not.

The Court finds that none of these arguments demonstrate that the ALJ legally erred, or that his determination regarding Dr. Hesse's opinion is unsupported by substantial evidence. The Court may only consider whether the ALJ followed the specific rules of law in weighing Dr. Hesse's opinion, and may not reweigh the evidence or substitute its own judgment for the Commissioner's. *Cowan*, 552 F.3d at 1185. Here, the ALJ found that Dr. Hesse's opinion was unsupported by objective medical findings. Thus, the medical evidence that the ALJ cited to and relied upon provides the requisite support for his decision to reject Dr. Hesse's opinion.

In his Motion, Mr. Padilla asks the Court to reconsider all of the evidence in the record in a light that is more favorable to medical evidence he believes supports his claim that he is severely impaired by arthritis and unable to work because of those

problems. The ALJ did not discuss malingering or Mr. Padilla's misstatement to Dr. Castillo that he had been previously diagnosed with severe arthritis as the reasons for discounting Dr. Hesse's opinion. However, the Court need only consider the ALJ's decision itself, and declines to look outside of it as Mr. Padilla suggests.

Further, while Mr. Padilla is correct that an ALJ has a duty to develop the record when he finds a claimant's medical records are insufficient, *Thomas v. Barnhart*, No. 04-7141, 147 Fed. Appx. 755, 760 (10th Cir. Sept. 2, 2005) (unpublished), or require clarification and additional information, *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004), the Court does not find that further development was necessary here. The ALJ rejected Dr. Hesse's opinion because it was unsupported by clinical and laboratory findings. There is no indication that the ALJ was unclear or unsure about any portion of Dr. Hesse's opinion.

Mr. Padilla has failed to establish how the ALJ's analysis and discussion of Dr. Hesse's medical opinion was inadequate or not supported by substantial evidence. The Court finds that the ALJ properly considered Dr. Hesse's opinion.

### 4. The ALJ's Consideration of Dr. Doggett's Medical Opinion

Mr. Padilla's treating chiropractor, Dr. Doggett, opined on June 1, 2011 that Mr. Padilla could only sit for a total of three hours, and stand and/or walk for a total of three hours, in an eight-hour workday. (AR 795). Dr. Doggett further determined that Mr. Padilla must be allowed to alternate between sitting and standing at will throughout the day, that he can lift up to 20 pounds frequently, and frequently balance, crouch, crawl, and reach above shoulder level. (AR 795–96). Dr. Doggett diagnosed Mr. Padilla with chronic cervical and lumbar spondylosis with fibromyalgia, and noted that he had been

14

treating Mr. Padilla since May 20, 2008. (AR 797) Dr. Doggett stated that Mr. Padilla had been totally disabled since July 15, 2010, and that he was not expected to return to work. (*Id.*).

The ALJ gave Dr. Doggett's opinion "some weight," particularly regarding Mr. Padilla's ability to lift, reach overhead, and perform other postural activities. (AR 22). However, the ALJ found that Mr. Padilla's musculoskeletal impairments did not limit his ability to remain upright impeding his ability to stand and/or walk for six hours in an eight-hour workday. (*Id.*). The ALJ pointed out that the x-rays of Mr. Padilla's spine revealed only mild spinal impairments. (*Id.*).

Mr. Padilla contends that the ALJ erred in discounting Dr. Doggett's opinion concerning his ability to stand, walk, and sit because there is other evidence in the record that supports Dr. Doggett's opinion. The Commissioner failed to rebut Mr. Padilla's argument regarding Dr. Doggett's opinion in her Response.

The Rulings make clear that opinions from non-acceptable medical sources, such as chiropractors, are important in determining the severity and limiting effects of a properly-diagnosed condition. SSR 06-03p 2006 WL 2329939 at *2. When considering what weight, if any, to afford a medical opinion or other evidence from such a source, the ALJ should consider the same six deference factors typically used to evaluate the weight of an acceptable medical source's opinion. *Id.* at *4; 20 C.F.R. §§ 404.1527(c) and 416.927(c).

The ALJ should explain the weight given to opinions from these other sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning. SSR

15

06-03p, 2006 WL 2329939 at *6; *see also Bowman v. Astrue*, 511 F.3d 1270, 1274 (10th Cir. 2008). This duty is commensurate with the ALJ's more generalized duty to "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

Mr. Padilla argues that, despite granting Dr. Doggett's opinion some weight, the ALJ diverged from it in the functional areas of standing and walking. Mr. Padilla also points the Court to other medical evidence in the record that he claims bolsters Dr. Doggett's opinion concerning his limitations standing and walking. The Court finds that none of these arguments show that the ALJ legally erred or that his determination regarding Dr. Doggett's opinion is unsupported by substantial evidence. Again, the Court only considers whether the ALJ followed the specific rules of law in weighing Dr. Doggett's opinion, and may not reweigh the evidence or substitute its own judgment for the Commissioner's. *Cowan*, 552 F.3d at 1185. In his Motion, Mr. Padilla asks the Court to reconsider all of the evidence in the record in a light that is more favorable to medical evidence he believes supports his claims that he has disabling functional limitations. Here, the ALJ found that Dr. Doggett's opinion was unsupported by objective medical findings. The Court has reviewed that evidence, and finds that the medical evidence he relied upon in making that determination provides substantial support for his decision to reject the portion of Dr. Doggett's opinion concerning standing and walking.

Mr. Padilla has failed to establish how the ALJ's analysis and discussion of Dr. Doggett's medical opinion was inadequate and not supported by substantial evidence. The Court finds that the ALJ properly considered Dr. Doggett's opinion.

B.    _Challenge to the RFC Finding_

Last, Mr. Padilla contends that the ALJ erred by not making any findings as to Mr. Padilla's ability to bend, walk, stand, or sit during the workday. He argues that the ALJ was required to explicitly define his ability to perform those activities, pursuant to Social Security Ruling 96-8p, 1996 WL 374184 (July 2, 1996), and therefore he failed to discuss the main exertional components of light work. Mr. Padilla maintains that the medical evidence in the record, specifically evidence from Dr. Rivera, Dr. Hesse, and Dr. Doggett, reveal that he cannot sit for more than a few minutes at a time or stand or walk for prolonged periods of time, and that he has weakness in his lower extremity. (AR 789, 791, 795, 832–24). Mr. Padilla reasons that the ALJ failed to give this evidence sufficient weight, rendering an RFC finding for light work that is unsupported by sufficient evidence and contrary to law. The Commissioner responds that the ALJ was not required to provide a technical "function-by-function" analysis, and that substantial evidence supports his findings in the areas of bending, walking, standing, and sitting.

As stated above, the ALJ found Mr. Padilla to be capable of doing a restricted range of light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). The frequent lifting or carrying of objects weighing up to 10 pounds implies that the worker is able to do occasional bending, i.e., for no more than one-third of the workday. SSR 83-14, 1983 WL 31254, at *4 (Jan. 1, 1983). "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). "Sitting

may occur intermittently during the remaining time." *Id.*

Social Security Ruling 96–8p provides that "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96–8p, 1996 WL 374184 at *3. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling (SSR) 96–8p, 1996 WL 374184, at *7 (July 2, 1996). Here, the ALJ described Mr. Padilla's self-reports of his functional abilities and limitations, in addition to the activities that he engages in, as well as the medical evidence bolstering and detracting from his claim of disabling functional limitations.

First, the ALJ reviewed Mr. Padilla's self-reports and subjective complaints concerning his symptoms he alleged were caused by his impairments. Mr. Padilla alleged disability due to spine and neck injuries, and stated that his pain caused weakness in his legs, that his right leg often gave out causing him to fall several times a day, that he used a cane for ambulation, that he could stand for no more than five minutes at a time and only walk for one block at a time with the accompaniment of a friend. (AR 19–20). He also stated that he cannot sit comfortably for any period and needs to frequently shift positions. (*Id.*). The ALJ noted that Mr. Padilla left the hearing after 20 minutes due to discomfort with sitting. (*Id.*).

The ALJ found Mr. Padilla to be not credible regarding his subjective complaints of his symptoms.[2]  (AR 20). The ALJ also found that the objective medical evidence did not provide strong support for his subjective complaints. (AR 20). For example, Dr.

---

[2]  Mr. Padilla does not challenge the ALJ's credibility finding on appeal.

Hesse observed that Mr. Padilla's knees were non-tender and that his gait was normal. (AR 712). The x-rays taken of his spine showed only mild degenerative changes, and on examination, he again exhibited a normal gait but limited range of motion in the lumbar spine. (AR 782). He was unable to squat and to walk on his toes and heels, but his posture was normal, he had normal sensation in both legs, and there was no evidence of muscle weakness or atrophy throughout either lower extremities. (*Id.*).

In November, 2010, Mr. Padilla was examined by Dr. Rivera, who observed that Mr. Padilla had normal reflexes, muscle tone, and coordination. In January of the following year, Mr. Padilla reported worsening back pain, bouts of leg weakness, and frequent fall, but an MRI of his spine again revealed only minimal degenerative changes and a possible small annular tear at L1-L2. (AR 778–80). The following month, Dr. Padilla was evaluated by a neurosurgeon who noted that his motor strength was five out of a scale of five in both lower extremities. (AR 789). The neurosurgeon concluded that there was nothing on his MRI showing that he had impairment that was amenable to surgery. (Id.). In April 2011, Mr. Padilla saw a pain specialist, who determined that Mr. Padilla's reported pain was out of proportion to the findings from imaging tests. (AR 828–29).

Mr. Padilla points to evidence in the record that supports more restrictive limitations in the areas of walking, standing, and sitting during the workday.[3] However, the ALJ did not overlook the medical opinions asserting that Mr. Padilla had problems in these areas. Indeed, he evaluated those opinions and discounted them for various reasons, primarily because they were not supported by objective medical evidence.

---

[3] Mr. Padilla does not point the Court to any significantly probative evidence in the record demonstrating that he has difficulty bending and undercuts the ALJ's conclusion that he can do only occasional bending.

The ALJ noted that, with the exception of Mr. Padilla's own testimony regarding standing and walking limitations and rejected portions of Dr. Doggett's opinion, there was no other evidence in the record to support the existence of significant limitations in the areas of walking, standing, and sitting. A claimant cannot meet his burden by merely making subjective allegations; his statements about his symptoms alone cannot establish disability. 42 U.S.C. § 423(d)(3); 20 C.F.R. §§ 404.1508, 404.1528, 416.908, 416.928. Persuasive medical evidence is necessary to establish functional limitations and support a claim of disability. *Id.* The ALJ mentioned all of the evidence supporting more restrictive limitations in the areas of standing, sitting, and walking, and then explained why that evidence was either not credible or not supported by the objective medical evidence in the record. Thus, the ALJ properly excluded those limitations from his RFC finding.

Moreover, it is true that an ALJ must discuss any uncontroverted evidence he chooses not to rely upon and significantly probative evidence that he rejects, in addition to the evidence supporting his decision. *See Clifton*, 79 F.3d at 1010. However, Mr. Padilla has not identified any other uncontroverted or significantly probative evidence that was not considered by the ALJ that would support more restrictive limitations in the contested functional areas.

Mr. Padilla is incorrect that the ALJ failed to conduct an express analysis of his ability to bend, stand, walk, or sit. However, the ALJ's failure to find explicitly that Mr. Padilla was capable to doing the required bending, walking, standing, and sitting during the workday was not critical to the outcome of this case. *See Hendron v. Colvin*, 767 F.3d 951, 957 (10th Cir. 2014). There is no requirement that an ALJ point to "specific,

20

affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). Where, as here, the Court can follow the ALJ's reasoning in conducting its review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. *Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1166 (10th Cir. 2012). The Court "must, exercise common sense," and "cannot insist on technical perfection." *Id.* Thus, the Court finds that the ALJ sufficiently explained his RFC determination and supported his decision with substantial evidence.

## V.  Conclusion

For all of the foregoing reasons, the Court concludes that the ALJ did not commit the errors alleged by Mr. Padilla, or that any such error was harmless. In addition, the Court finds that substantial evidence supports all of the ALJ's determinations challenged by Mr. Padilla.

**IT IS THEREFORE ORDERED** that Mr. Padilla's *Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum*, (Doc. 18), be **DENIED** and that this cause of action is **DISMISSED WITH PREJUDICE**.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE